Rubie ROGERS, et al., Plaintiffs,
Appellees,

v.

Robert OKIN, M.D., etc., et al.,
Defendants, Appellants.

Rubie ROGERS, et al., Plaintiffs,
Appellants,

v.

Robert OKIN, M.D., etc., et al.,
Defendants, Appellees.

Nos. 79–1648, 79–1649.

United States Court of Appeals,
First Circuit.

Heard April 4, 1984.

Decided June 14, 1984.

See also, 390 Mass. 489, 458 N.E.2d
308.

William L. Pardee, Asst. Atty. Gen., Government Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Carl Valvo, Asst. Atty. Gen., Government Bureau, Boston, Mass., were on brief, for Robert Okin, M.D., etc., et al.

Joseph H. Rodriguez, Laura M. LeWinn and Penelope A. Boyd, Trenton, N.J., on brief for N.J. Dept. of Public Advocate, Div. of Mental Health Advocacy, amicus curiae.

Richard Cole, Boston, Mass., with whom Robert Burdick, Boston, Mass., was on brief, for Rubie Rogers, et al.

Before CAMPBELL, Chief Judge, DAVIS * and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This case concerns the rights of involuntarily committed mentally ill patients in Massachusetts to refuse antipsychotic drugs. It has involved all court levels in the federal system and the highest court of Massachusetts.

On April 27, 1975, Rubie Rogers and six other plaintiffs, all present or former mental patients in the May and Austin Units of the Boston State Hospital, filed suit against various officials and staff members of the hospital. The plaintiffs sought injunctive and monetary relief from the defendants' practices concerning the forcible medication and seclusion of patients in non-emergencies. Following certification of the plaintiff class and a lengthy trial, the district court granted plaintiffs injunctive relief on both their medication and seclusion claims, but denied plaintiffs' claims for damages under federal and state law. *Rogers v. Okin*, 478 F.Supp. 1342 (D.Mass. 1979).

Defendants appealed only from the district court's order enjoining the forcible use

* Of the Federal Circuit, sitting by designation.

of antipsychotic medication. Defendants did not appeal from the district court's order enjoining the seclusion of patients against their will. See Rogers v. Okin, 634 F.2d 650, 662 n. 12 (1st Cir.1980). Plaintiffs cross-appealed from the denial of their damages claims. We affirmed in part and reversed in part the district court's injunctive order; we affirmed the district court's denial of damages.[1]

On April 20, 1981, the Supreme Court granted certiorari to decide whether an involuntarily committed mental patient has a constitutional right to refuse treatment with antipsychotic drugs. 451 U.S. 906, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1981); see Mills v. Rogers, 457 U.S. 291, 293, 298–99, 102 S.Ct. 2442, 2445, 2448–49, 73 L.Ed.2d 16 (1982). Defendants did not seek review of the seclusion injunction, and plaintiffs, as respondents, did not cross-petition from the denial of relief on their damages claims. Id. at 294 n. 2, 102 S.Ct. at 2445 n. 2.

With certiorari pending in the Supreme Court, on April 23, 1981, the Massachusetts Supreme Judicial Court issued its opinion in In re Guardianship of Roe, 383 Mass. 415, 421 N.E.2d 40 (1981). Roe involved the right of a noninstitutionalized, mentally incompetent person to refuse antipsychotic drugs. The Massachusetts court held that, absent emergency, a judge (rather than a guardian or a doctor) would have to determine whether a noninstitutionalized, incompetent ward could be forcibly medicated. The court, grounding its result in common law and federal constitutional law, found that the ward had a protected liberty interest in refusing treatment with antipsychotic drugs. If incompetent, the ward was entitled to a judicial determination of "substituted judgment", that is, a judgment that approximated the ward's subjective perspective. The court identified six "relevant" but "not exclusive" factors that should guide the decisions of judges making the substituted judgment determination. At ———, 421 N.E.2d at 56–59.

In light of Roe and under the United States Supreme Court's "settled policy to avoid unnecessary decisions of constitutional issues", 457 U.S. at 305, 102 S.Ct. at 2451, the Court vacated our judgment and remanded for determination of whether the rights and duties of the parties could be determined entirely under state law. 457 U.S. at 305–06, 102 S.Ct. at 2451–52. The Court stated that an involuntarily committed patient's right to refuse medication has both substantive and procedural aspects, and that state law may go further than the federal Constitution both in recognizing substantive liberty interests and in creating procedural protections for those interests. 457 U.S. at 299–300, 102 S.Ct. at 2448–49.

After briefing and oral argument as to a proper course on remand, we certified nine questions of state law to the Massachusetts Supreme Judicial Court. On November 29, 1983, the Massachusetts court issued detailed answers that clarified the nature and extent of a patient's substantive and procedural rights under Massachusetts statutory, regulatory, and common law. Rogers v. Commissioner, 390 Mass. 489, 458 N.E.2d 308 (1983). These rights will be discussed in greater detail below.

Before we acted on the Supreme Judicial Court's answers, the United States Supreme Court decided Pennhurst State School & Hospital v. Halderman, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), in which the Court held that the Eleventh Amendment bars federal courts from awarding injunctive relief that orders state officials to comply with state law. The Pennhurst holding places new limits on the role of the federal courts in this long-lived litigation. With regard to the forcible medication of involuntarily committed mental patients, Massachusetts recognizes substantive and procedural rights that extend above the floor set by the due process clause of the Fourteenth Amendment. Such rights emanating from state law are no longer directly enforceable by federal courts in injunctive actions against state

---

1. For a more detailed description of the holdings of the district court and of this court, see

Mills v. Rogers, 457 U.S. 291, 293–98, 102 S.Ct. 2442, 2445–48, 73 L.Ed.2d 16 (1982).

officials. The federal courts retain the power and, in the circumstances presented by this suit, the obligation to decide the patients' federal constitutional claims.

We pause to note the irony that results from rereading the Supreme Court's *Mills v. Rogers* opinion in light of *Pennhurst.* In 1982, the Supreme Court avoided decision of a difficult federal constitutional question by remanding to this court, urging us to dispose of the case on state law grounds. 457 U.S. at 306, 102 S.Ct. at 2452.[2] With *Pennhurst,* the Court removed our power to do so. Now, two years after the Supreme Court returned this case to us in furtherance the Court's "settled policy" of avoiding unnecessary constitutional questions, *Pennhurst* requires us to face those questions. Fortunately, as will be indicated below, the Massachusetts Supreme Judicial Court's answers to our certified questions of state law have simplified our current task by changing the variables in the constitutional equation.

## I. Mootness & Abstention

█ Before reaching the merits of this appeal, we must briefly address defendants' contentions that this case is now moot or that abstention would be appropriate. Defendants argue that the Supreme Judicial Court's answers to our certified questions have mooted the federal constitutional issues by providing state law grounds sufficient to dispose of the case. The Supreme Court has stated that "a federal constitutional issue ... might be mooted ... by a state court determination of pertinent state law". *Colorado River Water Conservation District v. United States,*

424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

A state court decision can render a federal action moot only if the state decision has provided such relief so that any possible federal relief would not affect the rights and duties of the parties. In such a case, no live controversy would exist. Because a federal decision on the merits would be an advisory opinion, federal courts would lack jurisdiction. The Supreme Judicial Court's answers, however, although setting the stage, do not directly grant the patients the relief that they sought. Those answers do not constitute a directly enforceable judgment. A plaintiff could not obtain from a federal or state court a contempt citation for defendants' violations of the answers in *Rogers v. Commissioner.* A federal court injunction or declaration of federal rights, however, if appropriate, would provide the patients with meaningful legal relief.

█ The Supreme Judicial Court's careful delineation of the parties' rights and duties under state law has by no means ended the underlying controversy.[3] In determining jurisdiction, we should not simply assume that the defendants will comply with the dictates of state law as set out in the Supreme Judicial Court's answers. Those answers are not self-executing, and they were handed down recently enough so that they constitute aspirations not as yet translated into a record of compliance sufficient to eliminate any reasonable expectation "that the alleged violation

---

**2.** For another recent pre-*Pennhurst* instance of the Court avoiding federal constitutional questions by remanding to the court of appeals for consideration of potentially dispositive state law questions, see *Estelle v. Bullard,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983).

**3.** The Supreme Court remanded *Estelle v. Bullard, see supra* note 2, for reasons similar to those underlying the Court's remand in *Mills v. Rogers.* The Fifth Circuit's dismissal of *Bullard v. Estelle,* 708 F.2d 1020 (5th Cir.1983), on remand is distinguishable. *Bullard,* a habeas peti-

tioner, wanted the court to dismiss his habeas petition so that he could file in state court to take advantage of a recent, favorable state constitutional ruling. The Fifth Circuit vacated and remanded to the district court with instructions to dismiss the case with prejudice *not* because relief was available against state officials in state court on state law grounds, but rather because the petitioner and the warden both wanted the district court's grant of the writ dismissed. With no case or controversy, the federal courts lacked jurisdiction.

[of federal law] will recur".[4] *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Moreover, although the defendants at oral argument stated a present intention to comply with the terms of the Supreme Judicial Court's interpretation of state law, the defendants consistently resisted a suggestion that they enter into a binding agreement to act according to the terms of the Supreme Judicial Court's answers.[5]

We further note that the *availability* of relief in state courts under state law following *Rogers v. Commissioner* does not preclude this federal action. A plaintiff alleging a cause of action under 42 U.S.C. § 1983 need not first exhaust state judicial remedies. *See Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked").

Nor do we believe that abstention would be appropriate at this stage of the litigation. In *Mills v. Rogers*, the Supreme Court directed this court to determine whether either certification of state law questions or abstention would be appropriate. 457 U.S. at 306. The certification process has amply accommodated state interests and has yielded an unambiguous elucidation of relevant state law. The strands of the abstention doctrine represented by *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), therefore do not apply. *See Colorado River Water Conservation District v. United States*, 424 U.S. at 814–16, 96 S.Ct. at 1244–46; *see also Zablocki v. Redhail*, 434 U.S. 374, 379–80 n. 5, 98 S.Ct. 673, 677–78 n. 5, 54 L.Ed.2d 618 (1978). In general, certification serves as a substitute for, not a complement to, abstention. *See, e.g., Bellotti v. Baird*, 428 U.S. 132, 150–51, 96 S.Ct. 2857, 2867–68, 49 L.Ed.2d 844 (1976). This litigation has now entered its tenth year, and abstention would only occasion further delay.

## II. Due Process

The only issue now before us concerns the rights, under the due process clause of the Fourteenth Amendment, of involuntarily committed mentally ill patients to refuse antipsychotic medication.[6] The Supreme Judicial Court of Massachusetts has simplified our task by providing clear, comprehensive answers to our nine certified questions of state law.

The federal due process clause provides procedural protections for state-created substantive liberty interests. *See, e.g.,*

---

**4.** Of course, failure to comply with state law would not automatically violate due process. Where substantive rights and procedural protections under state law exceed the minima required by the federal due process clause, actions that violate state law may nonetheless satisfy the requirements of federal due process.

**5.** We do not mean to ascribe any bad faith to defendants. Their resistance may well have arisen not from a belief that defendants were not bound by the Supreme Judicial Court's expression of state law, but rather from a belief that under *Pennhurst* the federal courts would lack jurisdiction to enforce, via contempt proceedings, defendants' compliance with an agreement to abide by the Supreme Judicial Court's answers.

**6.** Defendants have attempted to revive an issue that has long since dropped from this case. They argue that in light of *Pennhurst* we should dismiss the district court's seclusion injunction, which is based entirely on state law. *See Rogers*

*v. Okin*, 478 F.Supp. at 1374. However, in 1979 when the defendants originally brought their appeal, they did not appeal from that part of the district court's order that enjoined state officials from violating state statutes and regulations with regard to seclusion. *See Rogers v. Okin*, 634 F.2d at 662 n. 12. In defendants' Notice of Appeal and in their Docketing Statement, they explicitly limited the scope of their appeal to the district court's injunction concerning forcible medication. We addressed seclusion issues only with regard to the patients' cross-appeal for damages. *Id.* at 662–63. Defendants did not present the seclusion issue to the Supreme Court. *Mills v. Rogers*, 457 U.S. at 294 n. 2, 102 S.Ct. at 2445 n. 2. The Supreme Court vacated our prior judgment, but neither that event nor the intervening *Pennhurst* ruling permits defendants to revive an issue that has not been in this case ever since defendants failed, in late 1979, to appeal the seclusion injunction.

*Mills v. Rogers*, 457 U.S. at 300, 102 S.Ct. at 2449 (citing *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980), and *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)); *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In *Rogers v. Commissioner,* the Supreme Judicial Court recognized certain criteria or standards that create "objective expectations" concerning the circumstances under which an involuntarily committed patient may be medicated against his will. In *Vitek v. Jones,* 445 U.S. at 489–90, 100 S.Ct. at 1261–62, state law that permitted the transfer of a prisoner to a state mental hospital if the prisoner "suffer[ed] from a mental disease or defect" that "[could not] be given proper treatment" in prison created an "objective expectation" that gave the prisoner a protectible liberty interest. So too in the present case, the substantive rights created by legitimate, objective expectations derived from state law are entitled to the procedural protections of the due process clause of the Fourteenth Amendment. In *Rogers v. Commissioner,* the highest court in Massachusetts held that state law established the following substantive rights:

1. Civil involuntary commitment of a person to a state mental institution does not constitute a determination of incompetency to make treatment decisions. "[T]he right to make treatment decisions is an essential element of the patient's general right 'to manage his affairs' ". *Rogers v. Commissioner,* 390 Mass. at 494–97, 458 N.E.2d 308 (quoting Mass.Gen.Laws Ann. ch. 123, § 25) (footnote omitted).

2. A patient declared to be incompetent is entitled to a "substituted judgment" treatment decision.[7] The decision does not attempt to determine the objective "best interests" of the patient, but rather seeks to approximate with as much accuracy as possible the actual, subjective wants and needs of the patient. 390 Mass. at 499–501, 458 N.E.2d 308.

3. The "substituted judgment" decision requires consideration of at least the six factors listed in *In re Guardianship of Roe,* 383 Mass. at —— ——, 421 N.E.2d at 56–59. These factors include: (1) the patient's expressed preferences regarding treatment; (2) his religious beliefs; (3) the impact of the decision on the patient's family; (4) the probability of adverse side effects; (5) the prognosis without treatment; and (6) the prognosis with treatment. 390 Mass. at 505–06, 458 N.E.2d 308.

4. "[O]nly if a patient poses an imminent threat of harm to himself or others, and only if there is no less intrusive alternative to antipsychotic drugs, may the Commonwealth invoke its police powers without prior court approval to treat the patient by forcible injection of antipsychotic drugs over the patient's objection." *Id.* at 510–11, 458 N.E.2d 308 (footnote omitted).[8]

5. The state may, under its parens patriae power, treat a patient "against his will to prevent the 'immediate, substantial, and irreversible deterioration of a serious mental illness,' ..., in cases in which 'even the smallest of avoidable delays would be intolerable.' " *Id.* at 511–12, 458 N.E.2d 308 (quoting *In re Guardianship of Roe,* 383 Mass. at ——, 421 N.E.2d at 55).

6. To continue treatment in such a therapeutic emergency, the treating doctors must seek an adjudication of incompetency, and, if the patient is adjudicated incompetent, a substituted judgment treatment plan. 390 Mass. at 512, 458 N.E.2d 308.

The Supreme Judicial Court also recognized certain state-created procedural protections against forcible medication of in-

---

7. The Massachusetts Supreme Judicial Court had adopted the substituted judgment standard for deciding whether to administer medical or surgical treatment to incompetent patients in *Superintendent of Belchertown v. Saikewicz,* 373 Mass. 728, 370 N.E.2d 417 (1977).

8. The Supreme Judicial Court presented this standard after cataloguing known abuses of antipsychotic medication by officials who claimed to act in the incompetent patient's best interests, but who in fact followed agendas of convenience, punishment, and behavior modification. 390 Mass. at 508–09, 458 N.E.2d 308.

voluntarily committed mentally ill patients. The court held:

1. The incompetency determination must be made by a judge (not by a doctor or other state official), in one of four permissible state judicial forums. *Rogers v. Commissioner*, 390 Mass. at 496–99, 458 N.E.2d 308.

2. A judge (not a doctor or a guardian) must make the substituted judgment treatment decision for a patient who has been adjudicated incompetent. "The parties 'must be given adequate notice of the proceedings, an opportunity to be heard in the trial court, and to pursue an appeal.' " *Id.* at 501–04, 458 N.E.2d 308 (quoting *Matter of Moe*, 385 Mass. 555, 566–67, 432 N.E.2d 712 (1982)).

3. Following the determination of an appropriate treatment plan, a guardian (or the judge, if a guardian is not readily available) must monitor the treatment process to ensure that the substituted judgment treatment plan is followed. 390 Mass. at 504 & n. 20, 458 N.E.2d 308.

4. The use of antipsychotic medication as a chemical restraint must comply with Mass.Gen.Laws Ann. ch. 123, § 21, and regulations promulgated thereunder, 104 Code Mass.Regs. § 3.12. 390 Mass. at 509–10, 458 N.E.2d 308. Under section 21 of the statute, chemical restraint may not be used without "written authorization ... in advance by the superintendent [of the state facility, Mass.Gen.Laws Ann. ch. 123, § 1] or director of the I.C.U. [Intensive Care Unit for Women, *id.* ] or by a physician designated by him for this purpose.... Any use of restraint shall be reviewed at least every eight hours by said superintendent, director of the I.C.U. or physician, who shall authorize in writing its continuation or cessation and shall make a written record of the reasons for any such use and of his review". Section 3.12(8) of the regulations requires detailed record keeping concerning restraints (including chemical restraints), and section 3.12(9) requires a prompt report by any employee of a violation of the regulations and a "thorough investigation of any such report".

Although state procedural rules generally do not create federally protected rights, *see, e.g., Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Vruno v. Schwarzwalder*, 600 F.2d 124, 130–31 (8th Cir.1979); *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978), the procedures listed by the Supreme Judicial Court go beyond simple procedural guidelines. The Court used language of an unmistakably mandatory character, requiring that "[i]ncompetence *must* be determined by a judge", that "[a] judge *must* make the substituted judgment decision", and that forcible medication in an emergency justifying exercise of the state's police power "*must* comply with" specified state statutes and regulations. 390 Mass. at 512–13, 458 N.E.2d 308 (emphasis added). The court further held that forcible medication will not occur absent specified substantive predicates: a declaration of incompetency and a substituted judgment decision calling for medication, or strictly defined emergencies justifying invocation of delimited police powers or parens patriae powers. Such a combination of "explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the state had created a protected liberty interest". *Hewitt v. Helms*, 459 U.S. 460, 470, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *see Parenti v. Ponte*, 727 F.2d 21, 24–25 (1st Cir.1984) (state regulation that places substantive and procedural restrictions on exercise of state official's discretion creates liberty interest); *Parks v. Watson*, 716 F.2d 646, 657 (9th Cir.1983) (per curiam) (state procedural requirements create entitlements protectible by due process if such requirements place significant substantive restrictions on agency action).

The determination that state procedural rules create liberty interests under the due process clause does not answer the question of what process is due under the Constitution. Procedural minima prescribed by the due process clause are not necessarily coextensive with procedures

prescribed by state law. Where state procedures fall below the minimum requirements of the due process clause, those procedures are invalid. *See Vitek v. Jones,* 445 U.S. at 491, 100 S.Ct. at 1263; *Wolff v. McDonnell,* 418 U.S. at 557, 94 S.Ct. at 2975. Conversely, if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny. *E.g., Hewitt v. Helms,* 103 S.Ct. at 884 (Stevens, J., dissenting) ("today's majority opinion locates the due process floor at a level below existing [state] procedures").

 As the United States Supreme Court anticipated in *Mills v. Rogers,* 457 U.S. at 303, 102 S.Ct. at 2450, Massachusetts law requires "greater protection of relevant liberty interests than the minimum adequate to survive scrutiny under the Due Process Clause". We need not identify the precise level of procedural protection required under the Constitution, because it is apparent the Massachusetts procedures rise well above the minima required by any arguable due process standard.

Massachusetts law requires *judicial* process for determining whether an involuntarily committed mentally ill patient is incompetent to make his own treatment decision. State law also requires *judicial* process for making the substituted judgment treatment decision. Although we do not decide the issue, the Supreme Court intimated in *Mills v. Rogers,* 457 U.S. at 303–04 & n. 23, 102 S.Ct. at 2450–51 & n. 23, that the Constitution may well not require a judge, rather than a doctor, to make the incompetency and substituted judgment decisions prior to forcible medication. *Cf. Youngberg v. Romeo,* 457 U.S. 307, 322–23, 102 S.Ct. 2452, 2461–62, 73 L.Ed.2d 28 (1982) (given goal of minimizing judicial interference with internal operations of state institutions, "there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making [treatment] decisions") (citations

omitted); *Parham v. J.R.,* 442 U.S. 584, 608–09 & n. 16, 99 S.Ct. 2493, 2507–08 & n. 16, 61 L.Ed.2d 101 (1979) ("The judicial model for factfinding for all constitutionally protected interests, regardless of their nature, can turn rational decisionmaking into an unmanageable enterprise.... [T]he supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the ... treatment of mental ... illness may well be more illusory than real.") (citation omitted). Massachusetts' requirements of a judicial decisionmaker, adversary proceedings, and detailed regulations governing the use of chemical restraints provide more than adequate procedural protections for patients' liberty interests.

The Third Circuit recently approved, on due process grounds, less protective state procedures for the forcible medication of involuntarily committed mentally ill patients. *See Rennie v. Klein,* 720 F.2d 266 (3d Cir.1983) (en banc) (on remand from *Rennie v. Klein,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982)). The Supreme Court had remanded *Rennie* for further consideration in light of *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), in which the Court had held that recovery in a suit for damages brought by mentally retarded patients against doctors and other professionals for alleged violations of Fourteenth Amendment liberty interests depends on whether the treating doctor or professional exercised "professional judgment". *Id.* at 323, 102 S.Ct. at 2462. Although a majority of the judges of the Third Circuit would require a higher due process standard for forcible medication of the mentally ill than the "professional judgment" standard of *Youngberg,* which applied to treatment of the mentally retarded, *see Rennie v. Klein,* 720 F.2d at 720–72 (Adams, J., concurring in the result) (joined by Becker, J.); *id.* at 275–77 (Weis, J., concurring) (joined by Higginbotham, J., and Sloviter, J.); *id.* at 277 (Gibbons, J., dissenting), every judge but one agreed that the applicable New

Jersey procedural rules[9] comport with the various due process standards established in the court's opinions. *See id.* at 270 (Garth, J.); *id.* at 272 (Adams, J., concurring in the result); *id.* at 274 (Seitz, C.J., concurring); *id.* at 277 (Weis, J., concurring). The New Jersey procedural rules do not require any judicial participation in the decision forcibly to medicate and do not regulate official behavior as strictly as do the Massachusetts regulations, Code Mass. Regs. 3.12. *A fortiori* the procedures mandated by Massachusetts law satisfy due process.

As we survey remedial possibilities, we see that the extremes are not available to us: a declaration of mootness or abstention would not be justified; and an injunction ordering Massachusetts officials to comply with the terms of *Rogers v. Commissioner* is barred by *Pennhurst.* It would of course be possible to attempt to identify the minimum standards of due process required by the Constitution and enjoin adherence to these standards. But to prolong this litigation solely to require conduct meeting lower standards than those presently in force under state law makes little sense.

This does not mean that the plaintiffs obtain nothing. Largely as a result of their actions in this proceeding, the Supreme Judicial Court has declared that the involuntarily committed mentally ill patients in Massachusetts state institutions enjoy the full panoply of rights set forth in *Rogers v. Commissioner,* 458 N.E.2d at 319–20. We are satisfied that these rights equal or exceed the rights provided in the federal Constitution. While in many instances these rights find their counterparts in the federal Constitution, it is now no longer essential to delineate the boundaries of the federally protected rights given the state court's unequivocal commitment to standards which are as high or higher. Although we have no reason to doubt that

state officials will pursue good faith efforts to respect these interests or that state courts will enforce state (and federal) requirements, plaintiffs of course remain free to seek appropriate federal court remedies in the event of any significant variation from the requirements set out in the state court's opinion should such variation give rise to violations of federally protected rights. In addition, of course, should the state requirements be lowered by either judicial or legislative action, plaintiffs may seek a more precise definition of minimum standards required by the Constitution.

On remand the district court shall issue a declaration stating that the Massachusetts Supreme Judicial Court's recognition of substantive and procedural rights of involuntarily committed mentally ill patients in Massachusetts has created for those patients a liberty interest protected under the Fourteenth Amendment of the federal Constitution. The sources of the patients' liberty interest appear in the ten numbered paragraphs on pages 6–7 of this opinion. The district court shall also terminate its injunction governing the forcible medication of involuntarily committed mentally ill patients in Massachusetts. The district court may also address the issue of attorneys' fees under 42 U.S.C. § 1988.

*Remanded for further proceedings consistent with this opinion. Costs to plaintiffs.*

---

9. The relevant New Jersey statutes and regulations are summarized in *Rennie v. Klein,* 653 F.2d 836, 848–49 (3d Cir.1981) (en banc), *vacat-* *ed and remanded,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982).