CONSERVATION LAW FOUNDATION
OF NEW ENGLAND, INC., et al.,
Plaintiffs, Appellees,

v.

SECRETARY OF the INTERIOR, et al.,
Defendants, Appellants.

No. 85–1860.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1986.

Decided May 5, 1986.

Albert M. Ferlo, Jr., Dept. of Justice, Washington, D.C., with whom Anne S. Almy, Dept. of Justice, F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for defendants, appellants.

J. Cleve Livingston with whom Laurie E. Kermish, Boston, Mass., was on brief, for plaintiff, appellee Conservation Law Foundation of New England, Inc.

Before COFFIN, ALDRICH and BOWNES, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This appeal, taken by the Secretary of the Interior, hereafter Secretary, from an award of counsel fees arises from one of the Secretary's unsuccessful attempts to sell leases of oil exploration and drilling rights on the continental shelf in the commercially and environmentally important Georges Bank area. On August 27, 1984, the Secretary published a final notice of ·sale, pursuant to 43 U.S.C. § 1337($l$), setting the date for Lease Sale 82, Part I,[1] involving 1,138 blocks and 6.3 million acres, for thirty days later (September 26, 1984), the minimum time allowed by the statute. On September 7, the Conservation Law Foundation, hereafter CLF, appellee herein, filed suit under the National Environmental Protection Act, 42 U.S.C. §§ 4321–47 (NEPA), the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–56 (OCSLA), and the Endangered Species Act, 16 U.S.C. §§ 1531–43 (ESA), to stop the sale until the requirements of these acts had been met. The Commonwealth of Massachusetts had, shortly earlier, filed a similar suit, and the two were consolidated. CLF filed an extensive brief in support of its request for injunctive relief and the Commonwealth, likewise, filed a brief. Briefs in opposition were filed by the Secretary and by eight oil companies, intervenor defendants. Oral argument was had on September 20, and on the morning of September 25 the district court issued a preliminary injunction enjoining the sale, followed the next day by its memorandum and order setting forth its reasons. *Commonwealth v. Clark*, 594 F.Supp. 1373 (D.Mass.1984).

Immediately upon the court's issuance of the injunction, the Secretary asked for a hearing, which was held at 4:15 p.m. on

---

1. Lease Sale 82, originally developed and treated throughout the administrative process as one sale, had been split into two parts because a substantial number of tracts, to become Part II, were the subject of a boundary dispute between the United States and Canada pending before the International Court of Justice. See post.

September '/5th, and in which he asked the court to wi'hdraw its order. In support of this reques:, counsel represented in a "Critical New I:iformation" memorandum that no industry bids had been received, and that therefore the sale was being cancelled. Counsel asked the court to act as "a wise parent, when the child comes in and is hurt or does something wrong or that there's been a problem or something like that and the parent doesn't have to make it worse, sometimes just listening or understanding." The court, apparently rejecting the charge of being a child abuser, declined the request. We note counsel's language, however, in light of the Secretary's present position that the court's action had been of no consequence.

On November 21, 1984, the Secretary filed a notice of appeal. On December 21, over two months after a decision of the International Court of Justice (ICJ) determined that the tracts in question belonged to Canada, he cancelled Lease Sale 82, Part II. On March 5, 1985, after the Secretary represented by affidavit that no new sales would take place until February 1987 at the earliest and that the administrative record for Lease Sale 82 would be abandoned, the court dismissed the case. CLF then asked for attorneys' fees, and on May 30, 1985, the court issued its memorandum and order awarding fees of $75,943.38, subsequently corrected to $73,743.38, to CLF, from which order the Secretary now appeals.

■ The court awarded fees under the citizens' suit provisions of the ESA and OCSLA. 16 U.S.C. § 1540(g)(4); 43 U.S.C. § 1349(a)(5). Under both of these provisions, the court may award fees "whenever ... appropriate." The Secretary contends that where plaintiff appellee obtained only a preliminary, "status quo" injunction, and the case was mooted by "happenstance" before final resolution on the merits, appellee cannot be said to have attained such a degree of success as to make fees "appropriate." The meaning of appropriate, seemingly requiring less than "prevailing party," 42 U.S.C. § 1988, and its applica-

tion to the circumstances of this case are the principal questions before us.

In *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), the Court rejected the claim that it could be "appropriate" for an environmentalist body to seek a review of the situation and thereby be entitled to a fee, when its suit had failed. To qualify for a fee there must be *"partially prevailing ... some success*, even if not major success." 463 U.S. at 688, 103 S.Ct. at 3278 (emphasis in orig.). Again, "trivial success on the merits, or purely procedural victories," is not enough. *Id.*, n. 9. It is the Secretary's position that under this standard no fee is appropriate, plaintiff's vine having died before producing fruit. The Secretary would put it simply. Because Part I of the sale fell through for lack of bidders, and Part II because of the decision of the ICJ, both happenstance, plaintiff's suit accomplished nothing. True, the preliminary injunction was a finding of a likelihood of success, but it was never made concrete, even in the district court.

The Secretary argues that the *Ruckelshaus* Court used "appropriate" to mean prevailing on a matter other than the main issue. However, "prevailing," simpliciter, already meant this. *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). "Whenever appropriate," accordingly, would seem language chosen to give the court broader leeway. The Secretary at one point says that he "faithfully recognizes the distinction," and that "the term 'appropriate' modifies ... the traditional rule," but he quickly turns to cases, and even a secondary authority, that involve only that rule. We believe that the *Ruckelshaus* Court's phrase "some success, even if not major success," may be taken as notable progress, short of full achievement, on any issue of substance.

Many problems originate from a requirement of strict "prevailing," some of which would seem to lead to unfortunate results from the standpoint of the legislative purpose in awarding fees. Meritorious suits may become moot in various ways. Here

the sale aborted, but a statute may be rescinded, a civil rights plaintiff no longer need the relief, or some other happenstance, as the Secretary would have it, occur. The Secretary says CLF did not prevail here because the injunction was not a final ruling, but, equally, even if the case had gone to judgment in the district court, it still would not be final, since it could be reversed on appeal. The purpose of attorney's fees is to encourage actions to enforce the statute. It is proper that counsel must depend on success, but is it appropriate that they risk loss of all compensation when, though, on the record, demonstrably well on their way to final success, the rug is pulled out by happenstance mootness?

A preliminary injunction is not a mere procedural order; it contains an affirmative finding of likelihood of success, entitled to weight, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975); *Commonwealth v. Andrus,* 594 F.2d 872, 878 (1st Cir.1979), more than a mere holding that plaintiff's evidence, if believed, would warrant recovery. *Cf. Hanrahan v. Hampton,* 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980). And even here there may be questions of degree.

■ Our general conclusion is that though obtaining a preliminary injunction will not always entail fees, it may where the court's findings and rulings come close to the relief ultimately sought. *Cf. Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982). And, further, there may be related successes that do not go directly to the relief sought.

In the present case, though legally provisional, the court's extensive findings, not, incidentally, phrased provisionally, as to the shortcomings of the administrative record seem a quite obvious explanation of the Secretary's previously quoted unhappiness. The inference seems apparent that the much touted interested bidders disappeared by more than coincidence when their counsel, retained to persuade the court to abstain, lacked the material with which to do so. The Secretary succeeded

in having the action dismissed as moot, only after he agreed to abandon the administrative record, at least, arguably, the ultimate practical result sought by CLF.

Before leaving the mootness question, and as an introduction to the next, that of fees on issues strictly not prevailed on at all, we note our recent case of *Exeter-West Greenwich Regional School District v. Pontarelli, Comm'r.,* 788 F.2d 47 (1st Cir. 1986). There plaintiff School District brought a section 1983 action against the Commissioner of Education for his requiring it to pay for the education of a child in a religiously affiliated high school. The District contended this was an unconstitutional establishment of religion. The School District's basic obligation arose under a Rhode Island statute, and the district court certified to the Rhode Island Supreme Court the statutory meaning. That court interpreted the statute as permitting the School District to choose its own school, and did not reach the constitutional question. The district court thereupon dismissed the action as moot, but awarded attorney's fees. On appeal, we affirmed. Plaintiff had achieved success, although in the state proceedings, and only on a related issue, on which there would have been no section 1983 claim. On that claim, because of mootness, it did not prevail at all. There was, however, a very substantial overlapping so far as the litigation was concerned. We held this enough.

■ Each case in this area must stand on its own bottom. *Exeter-West Greenwich* is consistent with our belief that the Secretary cannot succeed wholly as to mootness, but we are troubled about payment for fees for the portion of plaintiff's activities in support of its Endangered Species Act claim, a claim which the court failed to reach at all. Plaintiff says that it temporarily, and, in result, permanently, stopped the sale, so what difference should the method make? It may be true, if a plaintiff had three different grounds for reaching the same result, and won ultimately on one, the court not reaching the others, that it could be harsh to say that it

was placed initially in the position of having to choose to proceed on only one ground or to pursue the others without hope of recompense therefor. We do not, however, face this stark question; plaintiff was not seeking three identical results. The Secretary correctly says,

"NEPA noncompliance would require revision of the environmental impact statement. ESA noncompliance would prohibit the leasing proposal. OCSLA noncompliance would require 'rebalancing' the federal and state interests, resulting in some modification of the leasing proposal."

Not only were there different consequences, but differing proof. As to endangered species we cannot say that the relationship with the result was such that plaintiff had reached even the barest point of prevailing. The court should not have awarded fees for its activities on that claim. *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

The Secretary further argues that CLF has no standing to raise the 43 U.S.C. § 1345 OCSLA violation found by the court, and thus is precluded both from receiving fees for work on that claim, and from relying on OCSLA's fee provision, 43 U.S.C. § 1349(a)(5), in support of its NEPA claim, which the court did, provisionally, sustain. Section 1345 requires that the Secretary give due consideration to recommendations of the "Governor of any affected state." The Secretary says that CLF cannot be a "person having a valid legal interest which is or may be adversely affected" (43 U.S.C. § 1349(a)(1), the citizens' suit provision) by a § 1345 violation, and hence cannot be eligible for fees.

■ The Congressional declaration of policy for OCSLA was that "the outer Continental Shelf is a vital national resource preserve held by the Federal Government for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards...." 43 U.S.C. § 1332(3). We agree with CLF that, apart from legal nice-

ties as to suit, it was a proper entity representing members, *see Warth v. Seldin,* 422 U.S. 490, 511, 515, 95 S.Ct. 2197, 2211, 2213, 45 L.Ed.2d 343 (1975), who could "show an actual interest that is being negatively affected, or will be negatively affected...." H.Rep. No. 95–590, 95th Cong. 2d Sess. 161, *reprinted in* 1978 U.S.Code Cong. & Ad. News 1450, 1567. CLF alleged that its members "depend upon the fishing resources and marine environment of Georges Bank ... for food, recreation, scientific study, and commercial benefits." Even were these interests found not to be economic, but only aesthetic and environmental, unless there were some legal obstacle their impairment would be sufficient injury to confer standing. H.Rep. No. 95–590, ante, at 161; *see United States v. SCRAP,* 412 U.S. 669, 685–89, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). We see no such obstacle.

In its Memorandum and Order concerning fees in the previous Lease Sale 52 litigation, which it adopted by reference in its fees memorandum in this case, the court had stated,

It is true that CLF could not seek relief for violations of Sections 18 and 19 of OCSLA on its own behalf, but it does not follow that duties and rights set out in OCSLA were not relevant and necessary to a proper preparation in the lawsuit for any plaintiff besides the Commonwealth of Massachusetts. OCSLA is the controlling statute for leasing activity.... OCSLA creates the duty to balance risks and benefits, a duty this Court found the Secretary had not fulfilled. In my view, it would have been virtually impossible to separate the duties created by NEPA and OCSLA, and it should not be expected that CLF would take part in the complicated and voluminous case without a full understanding of all of the law which governs the framework of the leasing process. *Commonwealth v. Watt,* No. 83–0530–MA, slip op. at 2 (D.Mass. Oct. 10, 1984).

With this we agree. But not only were the same principles of law involved, but the

same issues of fact. Requiring the Secretary to consider the Governor's recommendations is part of a larger scheme to insure, in part, that interests such as those represented here by CLF will be heard and protected. We consider that § 1349(a)(5), the citizens' suit provision of OCSLA, is an "umbrella" provision, designed to "lead to a unitary court action—where all challenges are raised, under one or more statutes." H.Rep. No. 95–590, ante, at 162. When a plaintiff prevails on any element of such an action, he is entitled to fees; "it would seem anomalous if a prevailing petitioner were denied fees merely because [the success of] his challenge rested on objections from outside the [OCSLA], when the [OCSLA] provides the mechanism by which those objections may be made." *Roosevelt Campobello Int'l. Park Comm'n. v. EPA*, 711 F.2d 431, 438 (1st Cir.1983).

The Secretary argues that CLF can be said to have prevailed only on its NEPA claims, and its fees must be limited to work on those claims. The *Roosevelt Campobello* decision involved the interpretation of the Clean Water Act's citizens' suit provision, 33 U.S.C. § 1365(d), and recognized the concept of statutory relationship. The present case we believe is even stronger for the application of such a principle. Because of the exclusivity provision in OCSLA, 43 U.S.C. § 1349(a)(6), OCSLA provides not simply the mechanism, but the only mechanism by which all objections may be made.

■ The guiding principles for this inquiry are set out in *Hensley v. Eckerhart*, ante, and are further elaborated in *Garrity v. Sununu*, 752 F.2d 727 (1st Cir.1984), where we said, at 734,

> Where, as here, plaintiffs have won a federal claim for which attorneys' fees are allowed to a prevailing party, the question becomes whether the claims on which they lost in the same suit were *unrelated* to the successful ones (in which event no fees may be awarded for work on the unsuccessful claims), or whether, instead, the losing claims included a "common core of facts," or were "based on related legal theories," linking

them to the successful claim. In the latter event, the award may include compensation for legal work performed on the unsuccessful claims. (Emphasis in original; footnotes omitted).

*See also Hensley*, ante, 461 U.S. at 434–35, 103 S.Ct. at 1939–40. Application of these principles leads us to agree with the district court, in its Memorandum and Order awarding fees in the earlier litigation over Lease Sale 52, that "it would [be] virtually impossible to separate the duties created by NEPA and OCSLA," *Commonwealth v. Watt*, No. 83–0530–MA, slip op. at 2 (D.Mass. Oct. 10, 1984). Factually, the claims are virtually indistinct. Each focuses on the inadequacy of the administrative record, predominantly the Environmental Impact Statement. Even the Secretary, arguing against the preliminary injunction, asserted that his compliance with his duties must be measured against the entire administrative record. We conclude that these claims were so interrelated that success on one supports an award of fees for both.

Finally, we do not affirm the court's allowance of a ten percent upward adjustment. The Court has recognized that "in some cases of exceptional success an enhanced award may be justified" to compensate fully an attorney who has obtained "excellent results." *Hensley*, ante, 461 U.S. at 435, 103 S.Ct. at 1940; *see also Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The Court has also recognized the district court's "discretion in making this equitable judgment." *Hensley*, ante, 461 U.S. at 437, 103 S.Ct. at 1941. This discretion is limited, however. *Id.* In its exercise the district court must, at a minimum, set forth in some detail the factors underlying its decision to adjust upwards; mere conclusory statements will not suffice. *Cf. Blum*, ante, 104 S.Ct. at 1549. *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 610 (1st Cir.1985). There is a burden on the fee applicant to prove the necessity of an adjustment to the calculation of a "reasonable" fee. *Id.* It is always possible to point to something in a case that takes it out of the realm of the ordinary. There

must be a burden on the district court to explain how the case was so extraordinary as to warrant the adjustment.

■ We find the court's explanation of the decision to adjust the lodestar upwards insufficient on this basis. In its memorandum awarding fees for work on the Lease Sale 52 litigation, adopted in its memorandum in the instant case, it stated only, "the quality of services rendered ... was superior in every respect...." There is no further explanation in either memorandum of this conclusion. Without more, this statement will not support an upward adjustment. The quality of the service should be reflected in the hourly charge in the first place. *Blum*, ante, 104 S.Ct. at 1549. Nor did the court indicate how, especially merely to have reached the point of a preliminary injunction, plaintiff's success was "exceptional."

Since the case must be remanded to redact time directly spent on the ESA claim, we also remand for reconsideration of any upward adjustment in light of the presumption against it expressed herein and the considerations set forth in *Blum*, ante, 104 S.Ct. at 1548–50.

*Affirmed* in part; *reversed* in part.