Rubie ROGERS, et al., Plaintiffs,

v.

Robert OKIN, et al., Defendants.

No. CA 75–1610–T.

United States District Court,
D. Massachusetts.

June 27, 1986.

Richard Cole, Greater Boston Legal Services, Boston, Mass., Richard Burdick, Greater Boston Legal Services, Roxbury, Mass., Clyde D. Bergstresser, Shubow, Stahlin & Bergstresser, Inc., Marshall Simonds, Kenneth W. Simons, Goodwin, Procter & Hoar, Boston, Mass., for plaintiffs.

Suzanne Durrell, Asst. Atty. Gen., Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

## INTRODUCTION

At issue are requests by plaintiffs' counsel for an award of fees and costs [1] for their services in this civil rights case that, in general terms, dealt with the manner of treatment afforded patients in the Commonwealth's mental institutions.[2] Defendants oppose this petition arguing 1) that plaintiffs are not "prevailing parties" within the meaning of 42 U.S.C. § 1988 and 2) that the sums plaintiffs seek are unreasonable.

## I.

## PROCEDURAL HISTORY

In April 1975, seven patients at the May and Austin Units of Boston State Hospital filed a multi-faceted civil rights action, pursuant to 42 U.S.C. § 1983, as well as pendent state law claims, against a number of defendants, including the Commonwealth's Commissioner of Mental Health, the directors of the May and Austin Units, and several psychiatrists and psychologists. The plaintiffs sought both declaratory and injunctive relief, as well as compensatory and punitive damages. In particular, plaintiffs sought injunctive relief preventing defendants from forcibly medicating or confining committed mental patients, except in emergency situations.

On April 30, 1975, the plaintiffs requested a temporary order restraining the defendants from forcibly secluding or medicating them, and all other in-patients at the Austin and May Units, without their consent or that of their guardians, except where there was a serious threat of extreme violence. That motion was allowed.

On May 8th, the parties agreed to extension of the temporary restraining order, pending a decision on plaintiff's request for a preliminary injunction. Hearings on that issue were held on October 21, 23, 24, 29 and November 20 and 21, 1975. They were then recessed in order to give the parties and the court an opportunity to work out a settlement. For the next several months, a significant amount of time and energy was committed by the parties and the court in an unsuccessful effort to achieve a settlement. Thereafter, a hearing was held on comprehensive motions for summary judgment that had been filed by the defendants following the November 21, 1975 recess. After argument, those motions were denied.

On December 30, 1976, the defendants filed a motion to dissolve the Temporary Restraining Order prohibiting non-emergency use of medication without a patient's consent. This motion was heard on March 25, 1977, and was denied on April 13, 1977.

1. Pursuant to 42 U.S.C. § 1988.
2. The underlying litigation was extensive. Relevant citations are: *Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982); *Mills v. Rogers*, 454 U.S. 1136, 102 S.Ct. 990, 71 L.Ed.2d 288 (1982); *Mills v. Rogers*, 454 U.S. 936, 102 S.Ct. 471, 70 L.Ed.2d 245 (1981); *Okin v. Rogers*, 451 U.S. 906, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1981); *Rogers v. Okin*, 738 F.2d 1 (1st Cir.1984); *Rogers v. Okin*, 634 F.2d 650 (1st Cir.1980); *Rogers v. Okin*, 478 F.Supp. 1342 (D.Mass.1979); *Rogers v. Commissioner, Department of Mental Health*, 390 Mass. 489, 458 N.E.2d 308 (1983); *In re Guardianship of Roe, III*, 383 Mass. 415, 421 N.E.2d 40 (1981).

That decision was appealed. The matter was argued before the Court of Appeals on September 9, 1977. On December 8, 1977, the Court of Appeals affirmed. That very day, a merged trial began with respect to all liability and damage issues. Those proceedings involved seventy-four days of trial and argument, an 8000 page transcript covering the testimony of fifty witnesses, and more than two thousand pages of post-trial briefs.

On October 29, 1979, this court issued an opinion and order granting plaintiffs' requested injunctive relief with respect to their medication and seclusion claims. Their damage claim was denied. 478 F.Supp. 1342 (D.Mass.1979).

Defendants appealed this court's injunctive order concerning forced medication. Plaintiffs appealed the court's damage decision. The Court of Appeals issued a unanimous decision substantially affirming this court's injunctive order, as well as its decision as to damages. 634 F.2d 650 (1st Cir.1980). The Court of Appeals remanded the case for this court to develop specific standards for the implementation of the various safeguards covered by its order. On December 18, 1980, this court issued a procedural order designed to bring about expeditious compliance with the Court of Appeals' remand.

Defendants, thereafter, requested this court to vacate its order concerning forced medication. That motion was denied.

Defendants then filed a Motion to Clarify with the Court of Appeals, seeking to have this court's interim order vacated. That request was denied.

Defendants, thereafter, filed a *certiorari* petition with the Supreme Court. The petition for *certiorari* was granted. *Okin v. Rogers*, 451 U.S. 906, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1981). This court stayed its remand proceedings, pending a decision by the Supreme Court.

Plaintiffs had opposed defendants petition for *certiorari* in part, because of a case then pending before the Massachusetts Supreme Judicial Court, involving the rights of non-institutionalized mentally ill patients to refuse drug treatment. *In re Guardianship of Richard Roe, III*, 383 Mass. 415, 421 N.E.2d 40 (1981). Plaintiffs had intervened in *Roe, III*, filing a brief and arguing orally. It is apparent from the Supreme Judicial Court's subsequent opinion that it was in substantial agreement with this court's earlier decision on the merits. *Id.*

Relying on *Roe, III*, plaintiffs sought dismissal of defendants *writ of certiorari* or, in the alternative, a certification of pertinent questions to the Supreme Judicial Court. That request was denied. *Mills v. Rogers*, 454 U.S. 936, 102 S.Ct. 471, 70 L.Ed.2d 245 (1981). On January 13, 1982, counsel for the parties argued before the Supreme Court. Six months later, on June 18, 1982, the Court issued its opinion. *Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). The Court vacated the Court of Appeals decision and remanded the case to the Court of Appeals for a determination as to the impact of *Roe, III* on the plaintiffs' case.

After reinstating its prior order pending appeal, the Court of Appeals, on October 18, 1982, certified nine questions to the Supreme Judicial Court. On November 29, 1983, the Supreme Judicial Court responded to the Court of Appeals in *Rogers v. Commissioner, Department of Mental Health*, 390 Mass. 489, 458 N.E.2d 308 (1983). That decision provided a comprehensive analysis of mental patients' rights under state law to refuse drug treatment.

Shortly thereafter, the Supreme Court issued its opinion in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). That case prohibited, on Eleventh Amendment grounds, a federal court from ordering state officials to comply with state law. Relying on *Pennhurst*, defendants requested the Court of Appeals to vacate all injunctions and dismiss this case. The Court of Appeals refused to dismiss, but conclud-

ed that, in view of the Supreme Judicial Court's opinions in *Roe, III* and *Rogers,* there was no further need for this court's injunction. *Rogers v. Okin,* 738 F.2d 1 (1st Cir.1984). On June 28, 1984, this court entered an order consistent with the Court of Appeals mandate.

## II.

Following an action to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. In considering a request for attorneys' fees under Section 1988, a court must make two basic determinations: (1) whether the petitioner is a "prevailing" party; and (2) if so, what fee award would be reasonable under all the circumstances. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### A.

### PREVAILING PARTY

■ With respect to the first issue, this court determines that plaintiffs are prevailing parties. The essence of plaintiffs' claim was that they should not be forcibly medicated or secluded, except in clearly defined emergencies. That claim was vigorously opposed by defendants before this court, the Court of Appeals, the Supreme Court, and the Massachusetts Supreme Judicial Court. Reference to the various decisions of these courts makes clear that plaintiffs' contentions concerning forced medication and seclusion were essentially vindicated.[3] Plaintiffs' claim for damages was unsuccessful, because this court found that defendants' good faith immunity shielded them from liability, notwithstanding the fact that their conduct violated plaintiffs' constitutional rights. For purposes of this fee application, it is enough to

note that plaintiffs' claims for damages and injunctive relief involved a common core of facts, and were based on related legal theories. *Garrity v. Sununu,* 752 F.2d 727 (1st Cir.1984); *Conservation Law Foundation of New England Inc. v. Secretary of the Interior,* 790 F.2d 965 (1st Cir.1986); *Exeter-West Greenwich Regional School District v. Pontarelli,* 788 F.2d 47 (1st Cir.1986); *Seaway Drive-In, Inc. v. Township of Clay,* 791 F.2d 447 (6th Cir. 1986).

### B.

### REASONABLE FEE AWARD

This circuit employs the lodestar method for calculating attorneys fees in cases such as this. *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980). The lodestar is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended by counsel on the case. The various factors to be considered in establishing the lodestar fee are set forth in *King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir.1977).

### 1. REASONABLENESS OF THE TIME SOUGHT TO BE CHARGED

The plaintiffs' attorneys, Cole, Burdick, Bergstresser, and Simonds submitted comprehensive affidavits reflecting their time spent on specific claims, including their request for attorneys' fees.

Cole's hours totaled 6025.00; Burdick's 2360.20; Bergstresser's 1545.15 hours, plus an additional 77 hours for his firm.

Specially retained counsel, Simonds, claims 175.30 hours.

The total time for which compensation is requested is 10,182.65 hours.

Plaintiffs' request is broken down into three phases: 1) trial, 2) post-trial and appellate, and 3) fee petition.

#### a) *The Trial Phase*

■ It is fair to say that this case involved a number of complex and novel issues that would of necessity require a sig-

---

**3.** See section I, *supra,* for citations and description of the various cases. Given the extensive discussion of the relevant issues in the several decisions, it is unnecessary to dwell on them once again.

nificant amount of counsel time, both for the plaintiffs and the defendants.

Plaintiffs' legal team consisted of three attorneys. Defendants were represented by two Assistant Attorneys General and four private attorneys. All devoted a substantial amount of effort to the preparation and trial of the case. The time spent by the respective plaintiff and defense legal teams was comparable. For example, defendants lead counsel, Schultz, estimated that he devoted between 1500 and 2000 hours during the two year pre-trial and trial phase of the case. Plaintiffs' lead counsel, Cole, expended 2580.31 hours during the three year period between 1977 and 1979. It is relevant to note again that this case involved a 74 day trial, more than 800 pages of transcript, and roughly 2300 pages of post-trial briefs. Given the complexity of the issues involved, and the vigor and extent to which they were litigated, this court determines that the time spent by the plaintiffs' counsel on the trial phase of this case was reasonable, and that there was no unnecessary duplication of effort.

#### b) *The Appellate Phase*

■ The issues on appeal were complex and essentially ones of first impression. The defendants were vigorous and exhaustive in their opposition. The case was argued four times before the Court of Appeals, once before the Supreme Court, and twice before the Supreme Judicial Court.

Clearly, the Circuit Court is in a better position to assess the efforts of counsel at the appellate level than is the district judge. But, from this court's perspective, the time dedicated by plaintiff's counsel to the appellate process was reasonable, effective, and without unnecessary duplication.

#### c) *Attorneys' Fees Phase*

Defendants have been at least as vigorous in opposing plaintiffs' fee claim as they were in litigating the underlying case. The fee trial took three days. Prior to trial there were nine depositions, interrogatories to each counsel concerning fees and costs, as well as a number of requests for production of documents. Trial counsel as well as special counsel were, therefore, unavoidably involved. The time spent pursuing this fee request was reasonable, and there was no unnecessary duplication.

### 2. ADEQUACY OF DOCUMENTATION

Plaintiffs' attorneys have adequately documented the time spent by them by providing the court with detailed, contemporaneously prepared time affidavits, except with respect to the period prior the summer of 1977. Time estimates were submitted for that period. This court is satisfied that plaintiffs' submissions meet the standards of specificity and reliability required by this Circuit.

### 3. PRECLUSION OF OTHER EMPLOYMENT

■ Only Bergstresser offers preclusion as an additional factor in his fee request. During the relevant period, he was a partner in a small firm. During the extended period of time he was involved in this case, he was unable to handle a number of firm matters. Bergstresser was forced to pass up other, more profitable opportunities, because of the demands of this case. The salary and expenses of his firm went on during the extended period that his time was essentially uncompensated. Preclusion is a relevant and legitimate factor in this situation. *See Lamphere v. Brown University,* 610 F.2d 46, 47 (1st Cir.1979); *Ramos v. Lamm,* 713 F.2d 546, 558 n. 10 (10th Cir.1983); *see also Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 614 (1st Cir.1985).

### 4. CUSTOMARY RATE OF COMPENSATION IN THE COMMUNITY

At issue, as well, is the customary rate charged in Boston by counsel involved in cases of comparable complexity and difficulty. The parties offered conflicting expert opinion on the subject. Plaintiffs' experts, Edward Barshak and Paul Sugarman, are highly respected Massachusetts trial lawyers who have also been active in bar association matters.

Barshak's opinion was that Cole and Burdick should be awarded $140.00 an hour for the trial and the appellate phases of the case, and $127.50 an hour for the attorneys' fees phase. His opinion was that Bergstresser should be awarded $162.50 an hour for all phases of the case.[4]

Defendants' expert, Thomas Harrington, is a management and financial consultant to Boston law firms. He is not a lawyer. He testified that the range of prevailing Boston hourly rates in 1985 for civil litigation, by lawyers who have practiced law the same number of years as plaintiffs' attorneys, was $110–$125 an hour for Cole and Bergstresser and $120–$145 an hour for Burdick.

The difference in the rates advocated by the two experts is not staggering. But, in so far as the opinions of the two experts are in conflict, this court adopts those of Mr. Barshak and rejects those of Mr. Harrington.

■ This case has been pending for more than a decade. It is beyond dispute that inflation has eroded the value of the dollar since 1975. A practical and appropriate means to compensate counsel for the delay in fee payment is to make an award based on present legal rates for the services performed during the pendency of the litigation. This is a method advocated by plaintiffs' expert, Mr. Sugarman, and this court adopts his opinion.

The rates of compensation to be awarded, therefore, are as follows: Attorneys Cole and Burdick $140.00 an hour for all trial and post-trial appellate work, and $127.50 an hour for the attorneys' fees petition; Attorney Bergstresser $162.50 an hour for all work he has performed.

Applying that standard to the fee application of special counsel, the rate of compensation for Mr. Simonds is $175.00 per hour, and that of Mr. Simons is $66.50 per hour.

## 5. OTHER RELEVANT FACTORS

This case has had a dramatic and positive effect on the manner in which the Commonwealth operates its mental health facilities and its institution for the retarded. Moreover, the case has had great impact throughout the nation.[5] The various trial and appellate decisions have been cited often by other courts, and have been the subject of many articles in a variety of professional and lay publications. This widespread interest was undoubtedly due, in large part, to the fact that this was essentially a case of first impression.

The case was painstakingly prepared and tried by extremely competent and diligent counsel who, deservedly, enjoy a positive reputation for their specialized knowledge and skill in the area of mental health law. It was a difficult case that would not have been attractive to the bar at large, because of its complexity and because it involved a field of law practiced by relatively few lawyers in the Commonwealth. It required an enormous dedication of time and effort. And, of course, the contingent nature of the litigation made the recovery of any legal fees uncertain, to say the least.

While the job done by counsel, and the results obtained, were exceptional, the court feels that there is no need to adjust the lodestar in order to fully and fairly compensate them.[6] The court, therefore, awards as compensation and reimbursement the fees and costs set forth in the attached order.

---

**4.** This court notes that these figures are within the range of hourly rates approved by the First Circuit. *See Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir.1985); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984).

**5.** Indeed, only last week the Court of Appeals for the State of New York issued an opinion recognizing the right of committed mental patients to refuse treatment. *Rivers v. Katz,* 67

N.Y.2d 485, 504 N.Y.S.2d 74, 495 N.E.2d 337 (N.Y.1986).

**6.** This court recognizes that upward adjustments of a lodestar figure for quality of representation and results obtained "are to be few and far between." *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 610 (1st Cir.1985); *see also Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Garrity v. Sununu,* 752 F.2d 727, 739 (1st Cir.1984).

## ORDER

Petitioners were prevailing counsel in this complex, precedent-setting civil rights case that established the right of committed mental patients not to be forcibly medicated or secluded, except in clearly defined emergency situations. As prevailing counsel, they are entitled, under the Civil Rights Act, to an award of reasonable attorneys' fees for their services in this case since it was initiated in 1975. These services include a 74 day trial before this court, four separate arguments before the Court of Appeals for the First Circuit, argument before the United States Supreme Court, and two separate arguments before the Supreme Judicial Court of Massachusetts.

During the past eleven years, this four man team devoted a combined total of approximately 10,000 hours to the successful conclusion of this case. For the reasons articulated more fully in the accompanying memorandum, this court orders that they be compensated as follows:

1. For Greater Boston Legal Services, a total of one million, one hundred eighty thousand seven hundred and one dollars and eighty-one cents *($1,180,701.81)* for attorneys' fees and costs. This total includes:

a) $836,425.62 for the work of Richard Cole (5,459.05 hours expended on the trial and appellate phase of the litigation at the rate of $140.00 per hour, and 565.95 hours on the attorneys' fees phase of the litigation at the rate of $127.50 per hour).

b) $329,653.62 for the work of Robert Burdick (2,298.25 hours expended on the trial and appellate phase of the litigation at the rate of $140.00 per hour, and 61.95 hours on the attorneys' fees phase of the litigation at the rate of $127.50 per hour).

c) costs in the amount of $14,622.57 (total costs of $28,527.24 minus $13,904.67 in costs paid to date).

2. For Stahlin and Bergstresser, Inc., a total of two hundred sixty-two thousand, six hundred seventy-one dollars and fifty-five cents *($262,671.55)* in attorneys' fees and costs. This total includes:

a) $251,086.87 for the work of Clyde D. Bergstresser (1,545.15 hours at the rate of $162.50 per hour).

b) $6,695.00 for the work of members of Bergstresser and Stahlin, Inc. (15 hours expended by Jeremy A. Stahlin at $110.00 per hour; 15 hours expended by Morris Shubow at $110.00 per hour; 30 hours expended by Richard Iandoli at $65.00 per hour; 17 hours expended by Mary Squiers at $85.00 per hour).

c) costs in the amount of $4,889.68 (total costs of $5,485.01 minus $595.33 in costs paid to date).

3. For Goodwin, Procter and Hoar, a total of twenty-three thousand, eight hundred sixty-nine dollars and seven cents *($23,869.07)* in attorneys' fees and costs. This total includes:

a) $16,765.00 for the work of Marshall Simonds (95.80 hours at the rate of $175.00 per hour)

b) $5,286.75 for the work of Kenneth Simons (79.50 hours at the rate of $66.50 per hour)

c) costs in the amount of $1,817.32.

IT IS SO ORDERED.