## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47163

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, August 2020 Term |
| | ) | |
| v. | ) | Opinion Filed: November 10, 2020 |
| | ) | |
| JAMES JEFFERSON KENT, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Fifth Judicial District for the State of Idaho, Minidoka County. Jonathan P. Brody, District Judge.

The order of the district court is <u>reversed and remanded.</u>

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant State of Idaho. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Respondent James Jefferson Kent. Justin M. Curtis argued.

—————————————

STEGNER, Justice.

The State appeals from the district court's order granting James Kent's motion to suppress statements he made during a non-custodial interrogation. During this interrogation, the officer began reading Kent his *Miranda* rights, at which point Kent interrupted the officer and told him he would not answer any questions. The officer continued to read Kent his rights and, after completing the warnings, asked Kent if he was willing to speak with him. Kent said that he would, and eventually made incriminating statements. The district court suppressed the statements. The district court found that Kent was not in custody at the time, but nevertheless held: "Where *Miranda* warnings are read to an individual unnecessarily and the defendant invokes the right to remain silent, an officer may not ignore that invocation."

On appeal, the State argues that the district court erred by extending *Miranda*'s application to a non-custodial interrogation. In response, Kent contends that because he has a constitutional right to remain silent regardless of whether he was afforded *Miranda* warnings and irrespective of whether he was in custody, the district court did not err in suppressing his statements as having

1

been obtained in violation of the right to remain silent. For the reasons set forth below, we reverse the district court's order granting Kent's motion to suppress, and remand to the district court for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2018, a patrol officer with the Rupert City Police Department assisted in a probation search of Kent's home.[1] During the probation search, the officer found methamphetamine, marijuana, and drug paraphernalia in certain rooms occupied by Kent. Kent was not present at the time the contraband was discovered. As a result of the discovery, the officer contacted Kent by telephone to arrange a meeting to discuss the contraband found at his residence.

After several unsuccessful attempts to meet with Kent, the officer was able to meet him at Kent's residence on August 6, 2018. During this conversation, the officer informed Kent about the contraband located at his residence. Near the beginning of their conversation, Kent denied that the paraphernalia was his. The officer then began to read Kent his *Miranda*[2] rights. While the rights were being read, Kent interrupted and stated that he would not answer any questions. After completing the *Miranda* warnings, the officer asked Kent if he would be willing to talk to him. Kent responded, "Yeah, you can follow me." Kent then made several incriminating statements to the officer. The district court concluded that "[a]t no point was [Kent] arrested or restrained, he was never told he was not able to leave, and he was never told he could not terminate the conversation."

The State charged Kent with possession of methamphetamine, marijuana, and drug paraphernalia. Kent filed a motion to suppress, arguing that the statements should be suppressed because "despite his invocation of his Fifth Amendments rights, [the officer] continued to question [him] which resulted in incriminating statements being made." In response, the State argued that Kent was not in custody and, therefore, the officer had no obligation to stop questioning Kent once he had invoked his right to remain silent.

The district court granted Kent's motion to suppress. The district court also concluded that Kent unequivocally invoked his right to remain silent while being read his rights. Further, the district court found that Kent was not in custody for purposes of *Miranda*. Nevertheless, the district

---

[1] The probation search involved an individual living in Kent's home; the search was apparently unrelated to Kent himself.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

court concluded that "an invocation of the right to remain silent may not be ignored once invoked after being read *Miranda* warnings, regardless of custody." The district court reasoned,

> [i]f a person hears their *Miranda* rights, they expect to have those rights. If an invocation of a right contained in the warnings is not respected, the warnings are at best meaningless. An individual no longer knows that he is free to exercise his right to remain silent simply because warnings are read. This defeats the stated purpose of the *Miranda* warnings, "to insure that the individual knows he is free to exercise the privilege at that point in time."

> Therefore, some protection is needed for an invocation of the right to remain silent after a warning is given, even if the warning was unnecessary.

Based on the district court's reasoning, it granted Kent's motion to suppress his incriminating statements.[3]

The State filed a timely appeal.

## II. STANDARD OF REVIEW

"The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Bodenbach*, 165 Idaho 577, 589, 448 P.3d 1005, 1017 (2019) (quoting *State v. Moore*, 164 Idaho 379, 381, 430 P.3d 1278, 1280 (2018)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)).

## III. ANALYSIS

The Fifth Amendment to the Constitution guarantees that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. at 444, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." These procedural safeguards require police to inform suspects of their rights to remain silent and to counsel, and to obtain a knowing, voluntary,

---

[3] The district court also found that the statements were made voluntarily and had not been elicited while Kent was in custody. Accordingly, the State would be permitted to use the statements as impeachment evidence. *See Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("Despite the fact that patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination."). Such a use of Kent's statements would arise if Kent testified in his own defense. *See Harris v. New York*, 401 U.S. 222, 225 (1971).

and informed waiver of those rights. *Id.* "The prophylactic *Miranda* warnings therefore are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.' " *New York v. Quarles*, 467 U.S. 649, 654 (1984) (alterations in original) (quotations omitted).

"After a suspect has been advised of the right to remain silent and of the right to counsel pursuant to *Miranda*, police may not proceed with questioning if the suspect indicates a desire to remain silent." *State v. Payne*, 146 Idaho 548, 558, 199 P.3d 123, 133 (2008) (citing *Miranda*, 384 U.S. at 473–74). "An individual's right to cut off questioning is grounded in the Fifth Amendment and must be 'scrupulously honored.' " *Id.* (quoting *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)). However, decisions from both the United States and Idaho Supreme Courts make it clear that the protections afforded by *Miranda* are only triggered when "there has been such a restriction on a person's freedom as to render him 'in custody.' "[4] *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)); *see also Andersen*, 164 Idaho at 313, 429 P.3d at 854.

There are several pertinent facts that shape the issues presented in this appeal. First, the district court found that Kent was not in custody. The district court reasoned that Kent had not been arrested or detained, he was never told he was not free to leave, and he was never told he could not terminate the conversation. However, despite Kent not being in custody, the officer read Kent his *Miranda* rights. While these rights were being read to Kent, he unequivocally invoked the right to remain silent. However, the officer did not cease his questioning, eventually eliciting incriminating statements from Kent.

There are two main questions presented by this appeal. First, was the officer required to stop questioning Kent after he invoked his right to remain silent even though Kent was not in custody? Second, if an officer unnecessarily informs a person of his *Miranda* rights, is the officer

---

[4] Whether a suspect is in custody is generally "a fact determined by whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Andersen*, 164 Idaho 309, 313, 429 P.3d 850, 854 (2018). " '[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.' " *Howes v. Fields*, 565 U.S. 499, 508–09 (2012) (internal citations omitted).

4

required to comply with those *Miranda* measures, including ceasing questioning once Kent invoked his right to remain silent?

**A. As a preliminary matter, Kent had a right to remain silent regardless of whether he was in custody.**

Kent's arguments on appeal rely on the fact that the right to remain silent exists regardless of custody. The State does not dispute that the right to remain silent exists outside of custody; rather, the State argues that the right was not infringed upon by the officer's questioning.

In *State v. Moore*, 131 Idaho 814, 965 P.2d 174 (1998), this Court considered whether pre-arrest, pre-*Miranda* silence could be used in the State's case-in-chief. *Id.* This Court held that

> defendants' Fifth Amendment right[s] not to have their silence used against them in a court proceeding is applicable pre-arrest and pre-*Miranda* warnings. *The constitutional right is always present*. "While the presence of *Miranda* warnings might provide an additional reason for disallowing use of the defendant's silence, they are not a necessary condition to such a prohibition." *Miranda* only defines the time at which the interrogation has become so coercive that the defendant must be advised of his rights and waive them.

*Id.* at 820–21, 965 P.2d at 180–81 (italics added) (internal citation omitted). Therefore, it is well-established Kent enjoyed the right to remain silent regardless of whether he was in custody.

This is in direct contrast to the right to counsel in a custodial interrogation. Unlike the right to remain silent—which is in the text of the Constitution—the Fifth Amendment right to counsel during a custodial interrogation was *created* by *Miranda* and its progeny *Edwards v. Arizona*, 451 U.S. 477 (1981). *See McNeil v. Wisconsin*, 501 U.S. 171, 177–78 (1991) ("[W]e established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present.").

The difference between the right to remain silent and the right to counsel during a custodial interrogation is noteworthy because many of the cases cited by the State in support of its position that the district court erroneously extended *Miranda,* focus on whether a suspect can invoke the right to *counsel* in a non-custodial setting. *See, e.g.*, *State v. Hurst*, 151 Idaho 430, 434, 258 P.3d 950, 954 (Ct. App. 2011); *Commonwealth v. Libby*, 32 N.E.3d 890 (Mass. 2015) (holding that the defendant could not invoke the right to counsel because he was not in custody); *Commonwealth v. Morgan*, 610 A.2d 1013 (Pa. Super. 1992) (same).

Here, there is no question that Kent had the right to remain silent regardless of whether he was in custody. The question remains, however, whether the officer was required to cease

questioning once Kent unequivocally invoked his right to remain silent in a non-custodial setting, particularly once his *Miranda* rights had been read to him.

**B. Because the right to cut off questioning is a safeguard to counteract the coercive nature of a custodial interrogation, the officer was not required to stop questioning Kent once he invoked the right to remain silent.**

The district court granted Kent's motion to suppress, concluding that "invocation of the right to remain silent may not be ignored once invoked after being read *Miranda* warnings, regardless of custody." The district court reasoned that if *Miranda* warnings are given unnecessarily and the right to remain silent is invoked, the proper procedure is to cease interrogation.

On appeal, the State argues that the district court erroneously expanded *Miranda* to exclude Kent's non-custodial statements. The State argues that *Miranda* jurisprudence applies only in custodial settings as a means to counteract the coercive nature of custodial interrogations.

Kent responds that "[b]ecause individuals possess exactly the same Fifth Amendment right to remain silent regardless of whether they are in custody, and regardless of whether they have received *Miranda* warnings, this Court should apply the same standard to an unequivocal assertion of that right regardless of when it is asserted." Accordingly, Kent urges this Court to hold that upon an unequivocal invocation of the right to remain silent an officer must "scrupulously honor" that right by ceasing further interrogation.

The State does not dispute that Kent had a right against compelled self-incrimination that he could, and at one point did, invoke. However, the State contends that this is a "red herring." Instead, the State argues that the right to terminate questioning is a right created by *Miranda*, and that the right only applies to custodial settings to counteract the "inherently compelling pressures" of custodial interrogations. *McNeil*, 501 U.S. at 176 (1991). We agree that given the facts of this case, the officer was not obliged to stop questioning Kent.

The focus of this argument is the "right" to cut off questioning. This right is typically referred to as a safeguard of the Fifth Amendment created by *Miranda*. *See Mosley*, 423 U.S. at 103 ("The critical safeguard . . . is a person's 'right to cut off questioning.' "). "Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Id.* at 100–01 (citing *Miranda*, 384 U.S. at 473–74). Further, the right to cut off questioning must be "scrupulously honored." *Id.*

We hold the specific restrictions regarding questioning a suspect created by *Miranda* are limited to custodial interrogations. We also conclude the district court erred in expanding *Miranda's* application in the way that it did. "It is settled that the *safeguards* [e.g., the right to cut off questioning] prescribed by *Miranda* become applicable as soon as a suspect" is in custody. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (italics added) (quotation omitted). In fact, "[t]he requirement that law enforcement authorities must respect a person's exercise of that option *counteracts the coercive pressures of the custodial setting.*" *Mosley*, 423 U.S. at 104 (italics added).

> The Fifth Amendment's protection against self-incrimination, which *Miranda* purports to implement, merely guarantees that no defendant "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This provides obvious logical support for the proposition that a suspect has the proverbial "right to remain silent"—that is, the right not to be compelled to answer questions. It is less clear, however, that this guarantees a right not to be asked such questions at all.

*Fifth Amendment—Invocation of the Right to Cut off Questioning*, 124 HARV. L. REV. 189, 196 n.73 (2010).

Whether the defendant has the right to cut off questioning outside of custody is a matter of first impression. Further, the question is largely unanswered by any other jurisdiction. However, the Supreme Court of the United States has suggested that one cannot anticipatorily invoke a safeguard of *Miranda*. *See McNeil*, 501 U.S. at 181 n.3 ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation[.]' "). Additionally, the Kansas Supreme Court held the safeguards against self-incrimination established by *Miranda*—such as the right to counsel and the right to cut off questions—do not exist outside a presumptively coercive custodial interrogation. *See State v. Haddock*, 897 P.2d 152, 162 (Kan. 1995), *abrogated on other grounds by State v. James*, 79 P.3d 169 (Kan. 2003).

Because the right to cut off questioning is a right created by *Miranda* as a safeguard to the inherently coercive custodial interrogation, the safeguard is only applicable once the suspect is in custody. Here, Kent was not in custody. Therefore, the officer was not required to stop questioning. To be clear, Kent retained his right to remain silent throughout his entire interaction with the police officer. Had he invoked that right and sat mute, the officer would be obliged to desist. However, those are most decidedly not the facts presented in the State's appeal. We leave for another day

7

the length to which an officer may persist when confronted with an intransigent suspect, who is not in custody, yet declines to answer the officer's questions.

Because Kent argues that the fact that the officer read him his *Miranda* rights changes the required analysis, we next review whether the reading of *Miranda* requires the officer to comply with the safeguards provided by *Miranda* regardless of whether the suspect is in custody.

### C. *Miranda* rights that are read unnecessarily are a factor to be considered in whether subsequent statements were voluntary.

Kent alternatively argues that "even if this Court agrees with the State that an officer generally does not need to scrupulously honor the invocation of the right to remain silent absent custodial interrogation, the unique facts of this case still require[ ]" suppression of Kent's statements. Kent contends that the district court correctly concluded that "law enforcement officers are not free to give the *Miranda* warnings and then blatantly ignore a suspect's attempt to invoke any right thereunder."

The State responds, contending that the unnecessary reading of *Miranda* warnings do not provide any additional rights. First, the State notes that the case law relied on by Kent merely considered whether the officers' action rendered the statements involuntary under the Fifth Amendment rather than finding a *Miranda* violation. Second, the State argues that a *per se* rule that *Miranda's* prophylactic rules apply in a non-custodial setting merely because the officer reads the warnings is contrary to the body of case law set down by the Supreme Court of the United States.

Although not put in so many words, it appears that the district court held that once *Miranda* rights are read, the interrogation is transformed into a custodial interrogation, and officers are subsequently required to comply with the procedure set out in *Miranda*. There is a divergence of authority regarding this issue. The United States Court of Appeals for the Eighth Circuit most clearly identifies the jurisdictional split regarding the unnecessary reading of *Miranda* warnings.

> [The defendant] argues that the government must honor the rights he was read, even if he was not otherwise entitled to those rights. In contrast, the government objects that the reading of the *Miranda* warnings to [the defendant] was superfluous, since [the defendant] was not in custody, and was not entitled to *Miranda*'s protections in any event.
> . . . Several circuits and state supreme courts have discussed the transformation argument with varied results. Some courts have held that the reading of the *Miranda* rights during a non-custodial interrogation does not afford the suspect any of those rights, since the reading is unnecessary. *See, e.g.*, *Davis v. Allsbrooks*, 778 F.2d 168, 172 (4th Cir. 1985); *United States v. Charles*, 738 F.2d

8

686, 693 n.6 (5th Cir. 1984); *United States v. Kampiles*, 609 F.2d 1233, 1242 (7th Cir. 1979); *United States v. Lewis*, 556 F.2d 446, 449 (6th Cir.1977); *State v. Haddock*, 897 P.2d 152, 162–63 (Kan.1995). Other courts have suggested that the reading of the *Miranda* rights does transform a non-custodial interrogation into a custodial interrogation. *See United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir.), *cert. denied*, 525 U.S. 911 (1998); *Tukes v. Dugger*, 911 F.2d 508, 516 n.11 (11th Cir.1990). Finally, a third category of cases adopts a middle ground, permitting the trial court to consider the reading of the *Miranda* rights as one factor among many used to determine whether a suspect's statements are voluntary. *See Sprosty v. Buchler*, 79 F.3d 635, 642 (7th Cir.1996); *State v. Taillon*, 470 N.W.2d 226, 229 (N.D.1991).

*United States v. Harris*, 221 F.3d 1048, 1051 (8th Cir. 2000) (recognizing jurisdictional split but ruling on alternate basis).

In favor of treating the interrogation as a custodial interrogation, both the United States Court of Appeals for the Tenth and Eleventh Circuits suggest that, although a suspect cannot anticipatorily invoke his *Miranda* rights, there is an exception when the officer provides *Miranda* warnings and then refuses to honor them. *Bautista*, 145 F.3d at 1150–51; *see also Tukes*, 911 F.2d at 516 n.11. In *Bautista*, the defendant accompanied two law enforcement officers to the police station. *Bautista*, 145 F.3d at 1145. Bautista was never in custody, but was read his *Miranda* rights. *Id.* Bautista claimed that after he invoked the right to remain silent, the federal agents ignored the invocation and continued questioning him. *Id.* The Tenth Circuit expressed concern over the government's assertion that it made no difference that the law enforcement officer unnecessarily advised Bautista of his *Miranda* rights when he was not in custody. That court stated:

> The government's position misses the point of *Miranda* and *Edwards*. If the authorities are free to tell a suspect that he has the right to appointed counsel, but could, while continuing to interrogate him, refuse to provide such counsel on the grounds that the suspect was not actually in custody, the suspect would be led to believe that no request for counsel would be honored. "The coercive effect of continued interrogation would thus be greatly increased because the suspect would believe that the police 'promises' to provide the suspect's constitutional rights were untrustworthy, and that the police would continue to violate those rights as they wished, regardless of assurances to the contrary." *Tukes*, 911 F.2d at 516 n.11. . . . However, law enforcement officers are not free to give the *Miranda* warning and then blatantly ignore a suspect's attempt to invoke any right thereunder.

*Bautista*, 145 F.3d at 1150–51 (parallel citation omitted). As noted by the *Bautista* court, there is potential harm when a suspect is informed of his rights and those rights are not honored, i.e., the suspect may be led to believe his rights will not be honored under any circumstance. This was the

reasoning provided by the district court in this case in concluding that the statements should be suppressed.

On the other hand, some jurisdictions—including the Fourth, Fifth, and Sixth Circuits— conclude that an unnecessary recitation of *Miranda* rights does not provide any additional protection. *See, e.g.*, *Davis*, 778 F.2d at 172; *Charles*, 738 F.2d at 693 n.6; *Lewis*, 556 F.2d at 449. The Fourth Circuit noted,

> [t]o hold that the giving of *Miranda* warnings automatically disables police from further questioning upon a suspect's slightest indication to discontinue a dialogue would operate as a substantial disincentive to police to inform suspects of their constitutional protections. It would convert admirable precautionary measures on the part of officers into an investigatory obstruction.

*Davis*, 778 F.2d at 172; *see also Charles*, 738 F.2d at 694 (quotation marks omitted) ("The precaution of giving a suspect *Miranda* warnings in a noncustodial setting does not either transform that setting into, or help [ ] produce, a custodial interrogation for *Miranda* purposes.").

Although this Court has not had the opportunity to address this split, the Court of Appeals addressed this question in *State v. Hamlin*, 156 Idaho 307, 314, 324 P.3d 1006, 1013 (Ct. App. 2014). In *Hamlin*, the Court of Appeals stated,

> [t]o hold that the reading of *Miranda* warnings is a heavy indicator that the interviewee was in custody would give officers a disincentive to provide warnings that will be of benefit to interviewees regardless of their custodial status. The use of *Miranda* warnings should be encouraged, not deterred, as they both benefit interviewees and protect law enforcement from later allegations of *Miranda* violations.

*Id.* Based on this Court of Appeals decision, Idaho would fall among those jurisdictions in which an unnecessary reading of *Miranda* does not require an officer to act as if it is a custodial interrogation and cease questioning.

However, there is another option not explored by the majority of jurisdictions. Some jurisdictions, including the Seventh Circuit and the North Dakota Supreme Court, have held that precautionary *Miranda* warnings may be used as a factor to review whether the statements were made voluntarily.

> We believe that the absolute *per se* rule espoused by Taillon that *Miranda* warnings once given must be honored even though not required to have been given, "would operate as a substantial disincentive to police to inform suspects of their constitutional protections." *Id.* But we do not believe that *Miranda* warnings once given, albeit gratuitously, are wholly irrelevant. The giving of Miranda warnings

and the accused's reliance on the rights described in the warnings are relevant factors in evaluating the voluntariness of any incriminating statements.

*State v. Taillon*, 470 N.W.2d 226, 229 (N.D. 1991).

We adopt the rule set out in *Taillon*, where an unnecessary reading of *Miranda* is merely a factor to be considered in determining whether the statements were involuntary or given in violation of the Fifth Amendment. Such an approach strikes the appropriate balance between ensuring that *Miranda* warnings do not rise to such a level that the interrogation becomes coercive, and avoiding unreasonably obstructing law enforcement's ability to investigate a crime. Further, the State concedes that the proper legal standard in this case is whether Kent's statements were made voluntarily and not coerced. Under the application of this principle, we next review whether the statements were made voluntarily.

**D. Kent's statements were voluntary and, therefore, the district court erred in suppressing the statements.**

The district court concluded that Kent's statements were voluntary under the totality of the circumstances. Kent disputes this conclusion, arguing that after *Miranda* warnings were given his right to remain silent was ignored, rendering his statements involuntary.

In response, the State contends that the statements were voluntary. The State notes that Kent does not point to any evidence in the record to support the conclusion that the statements were involuntary besides to rearticulate his arguments regarding the reading of his *Miranda* rights.

To determine whether a confession is voluntary, a court must examine the totality of the circumstances and ask whether the defendant's will was overborne by police conduct. *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citation omitted). "The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' " *Id.* (citations omitted). "Some additional factors in the voluntariness determination include whether *Miranda* warnings were given, the length of the detention, the repeated and prolonged nature of the questioning, and deprivation of food or sleep." *State v. Doe*, 131 Idaho 709, 713, 963 P.2d 392, 396 (Ct. App. 1998).

Based on the totality of the circumstances, including the fact that *Miranda* rights were read unnecessarily, the district court's conclusion that Kent's confession was voluntary is supported by substantial and competent evidence. First, the interview only lasted approximately fifteen minutes in total. (Obviously, Kent was not subjected to "repeated and prolonged . . . questioning" or "deprivation of food or sleep.") After completing the reading of the *Miranda* rights, the officer

11

merely asked Kent if he would be willing to speak with him. After no further probing, much less badgering by the officer, Kent responded, "Yeah, you can follow me." Second, the interview occurred in Kent's own home, where he explicitly told the officer he would be leaving for work shortly after the conversation began. There is nothing in the record that suggests that Kent's will was overborne by the police officer's action. Accordingly, the district court's conclusion that Kent's statements were voluntary was not clearly erroneous.

## IV.    CONCLUSION

For the foregoing reasons, the district court's order granting the motion to suppress is reversed and the case remanded for further proceedings consistent with this decision.

Chief Justice BURDICK, Justices BEVAN, MOELLER and MELANSON, J. Pro Tem, CONCUR.