**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50335**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 5, 2024 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| BERT EUGENE LEE, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Kiley Stuchlik, District Judge.

Judgment of conviction for two counts of rape and two counts of lewd conduct with a minor under the age of sixteen, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Elizabeth A. Allred Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Bert Eugene Lee appeals from the district court's judgment of conviction for two counts of rape and two counts of lewd conduct with a child under sixteen. He argues the district court erred by denying his motion for a mistrial after a witness referenced Lee's invocation of his right to counsel during a police interview, improperly creating an inference of guilt. The district court's judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Lee was charged with two counts of rape, Idaho Code § 18-6101, and two counts of lewd conduct with a minor under sixteen, I.C. § 18-1508. A jury trial was held, resulting in a hung jury. Over a year later, a second jury trial was held.

1

At the second trial, Detective Jones testified to the following. After he received a report of allegations of sexual assault and rape by Lee against B.B., a minor under the age of sixteen, Detective Jones contacted Lee and asked him to come in for an interview. Lee did so. Detective Jones met with Lee for the interview and notified Lee of his *Miranda*[1] rights. During the interview, Detective Jones and Lee discussed the allegations against B.B. Detective Jones testified about the interview and his use of a bluffing technique. Detective Jones used a bluffing technique to imply DNA evidence existed and the DNA would prove what happened so Lee should be honest with the detective.

During cross-examination, defense counsel asked Detective Jones, "And did--after you had made that bluff did Mr. Lee back down regarding his denial of sexual contact?" Detective Jones answered, "He continued with his denials. And then eventually invoked his right to talk to an attorney." Defense counsel requested a conference outside the presence of the jury. In chambers, the judge and counsel discussed the statement and the possibility of it causing another mistrial. The parties agreed that defense counsel would object to the statement and move to strike on the record, the judge would strike the statement and tell the jury to disregard the stricken statement, and then the jury would be recessed to provide defense counsel time to draft a formal motion for mistrial.

Back on the record, in the presence of the jury, defense counsel objected to Detective Jones' statement and moved to strike. The district court sustained the objection by stating, "I'm going to strike the statement of the witness regarding the defendant invoking his right to counsel and instruct the jury not to consider that statement as evidence in this case." The court then recessed, and outside the presence of the jury, Lee moved for a mistrial under Idaho Criminal Rule 29.1, arguing the conduct was prejudicial and deprived him of a fair trial. Specifically, Lee argued his Fifth Amendment right to not have his silence used against him had been violated and it was fundamental error for the prosecutor to use silence against the accused for the purpose of implying guilt or to impeach credibility. The State refuted the argument clarifying that a request for an attorney is not the same as invoking a right to silence and because it was on cross-examination, the prosecution did not engage in questioning designed to elicit the response and should not be responsible. The district court considered the arguments, stating:

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

This is a matter within the discretion of the Court. I have here: "Where admissible evidence inadvertently gains admission and the jury is promptly instructed to disregard the evidence, it is presumed that the jury obey the instruction and mistrial is not warranted."

That's *State v. Hedger*, 115 Idaho 598, [768 P.2d 1331 (1989)] and *State v. Fluery*, 123 Idaho 9[, 843 P.2d 159 (Ct. App. 1992)]. The first one being an Idaho Supreme Court case, and the second being an Idaho Court of Appeals case. So I think in this case it wasn't [the prosecutor] purposely trying to elicit improper testimony.

Obviously it wasn't prosecutorial misconduct. It was a response to defense counsel's questioning, so I think that's relevant. And Counsel, you know, requested a bench conference immediately, and we immediately instructed the jury not to consider it. So I think that's important in this case as well. So I'm going to deny the defendant's motion for a mistrial at this time.

The statement by Detective Jones was not referenced or mentioned again for the remainder of the trial. The jury was instructed to disregard all testimony that had been excluded or stricken.[2] Lee was found guilty of all counts. He timely appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

---

[2] Final jury instruction twelve stated, in relevant part, "Certain things you have heard or seen are not evidence, including . . . [t]estimony that has been excluded or stricken, or which you have been instructed to disregard."

## III.

## ANALYSIS

Lee argues the district court committed reversible error by denying his motion for a mistrial after Detective Jones testified that Lee invoked his right to counsel. Lee contends the reference to the invocation of counsel creates an inference of guilt that prejudiced him and violates his Fifth Amendment rights. He asserts that the district court's instruction to the jury to disregard the statement was insufficient to cure the defect. The State argues the curative instruction immediately given to the jury ameliorated any impact from the improper testimony and the jury instructions further clarified that stricken testimony is not evidence. The State argues there is nothing to suggest the jury failed to follow the court's instructions and the potential prejudicial impact was minimal given the evidence presented.

### A. Stricken Testimony

We first examine whether the detective's testimony that Lee invoked his right to counsel violated his rights under the Fifth Amendment. The Idaho Supreme Court has reiterated a defendant's protection under the United States Constitution to invoke a right to silence without the prosecution commenting on the silence for the purposes of implying guilt.

> The Fifth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. The U.S. Supreme Court has interpreted this right also to bar the prosecution from commenting on a defendant's invocation of that right. A prosecutor may not use evidence of post-arrest, post-*Miranda* silence for either impeachment purposes or as substantive evidence of guilt because of the promise present in a *Miranda* warning. If a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in *Miranda* . . . becomes so diluted as to be rendered worthless. The prosecutor also may not use any post-custody silence to infer guilt in its case-in-chief. In cases of pre-*Miranda*, pre-arrest silence, the prosecutor may not use that evidence solely for the purpose of implying guilt. The prosecutor may use pre-*Miranda* silence, either pre or post-arrest, for impeachment of the defendant.

*State v. Parker*, 157 Idaho 132, 146-47, 334 P.3d 806, 820-21 (2014) (citations and quotation marks omitted). Although strictly speaking there is no "Fifth Amendment right to counsel," the right is a protective adjunct to the right to remain silent and a protective measure arising under *Miranda*. *State v. Kent*, 167 Idaho 689, 693, 475 P.3d 1211, 1215 (2020); *State v. Blevins*, 108 Idaho 239, 242, 697 P.2d 1253, 1256 (Ct. App. 1985).

4

Lee's invocation of rights was made after Lee had been given *Miranda* warnings but prior to any arrest or custodial setting. Despite the lack of a custodial setting, once the *Miranda* warnings have been given,

> [i]t is then that the promise contained in the statement of *Miranda* rights precludes the prosecutor from commenting on the defendant's silence. *See Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988) (holding that references to pre-arrest, post-*Miranda* silence violated due process). *Miranda* provides that "once warnings have been given . . . [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473-74; *cf. Davis v. United States*, 512 U.S. 452 (1994) (after waiving right to counsel, defendant may invoke that right by clearly requesting a lawyer).

*Kappos v. Hanks*, 54 F.3d 365, 368-69 (7th Cir. 1995).

Neither party disputes the statement that Lee's request to talk to an attorney is interpreted as Lee invoking his right to remain silent. Further, neither party argues that the district court erred in sustaining Lee's objection to the detective's testimony. Therefore, if the statement attributed to Lee was an invocation of silence, it was improper for the detective to provide that testimony under *Miranda* and *Parker*.

In evaluating the denial of a motion for a mistrial, the threshold inquiry on appeal is whether the State introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993). Here, the prosecutor argued that although he should have better prepared Detective Jones, because the statement by the detective occurred during cross-examination by Lee's counsel, the prosecutor cannot be held responsible for eliciting a statement regarding Lee asserting his right to counsel. Lee argued that, during the first trial, Detective Jones was asked essentially the same question but had a different response. In the first trial, Lee asked, "After you used the strong language with [Lee] he still continued to deny that he ever had sex with [B.B.]r; is that correct?" Detective Jones responded: "Correct." Lee then argued there was no reason for the detective to comment on Lee invoking his right to counsel and the question did not lead the detective to that answer.

The district court agreed that the prosecutor did not purposely elicit the statement regarding Lee invoking the right to an attorney and it was relevant that the response came as a result of cross-examination by defense counsel. However, the district court found that the detective's testimony was inadmissible.

Whether the prosecutor intended to elicit the improper testimony or not, "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that

5

testimony will be imputed to the State for the purposes of determining prosecutorial misconduct." *State v. Ellington*, 151 Idaho 53, 61, 253 P.3d 727, 735 (2011). Here, the detective's testimony that Lee invoked his right to counsel was gratuitous and prejudicial and is, therefore, attributable to the State.[3] The detective's testimony violated Lee's right to remain silent under the Fifth and Fourteenth Amendments. Because the evidence was inadmissible, we next determine whether it was reversible error, i.e., whether when viewed retrospectively, the error had a continuing impact on the trial.

**B.      Stricken Testimony's Contribution to Jury Verdict**

Where a criminal defendant shows an error based on a contemporaneously objected to constitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict and, therefore, was not reversible error. *State v. Johnson*, 163 Idaho 412, 421, 414 P.3d 234, 243 (2018). In conducting this inquiry, we presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

In this case, Lee argues that the error was so significant, the curative instruction was insufficient to ameliorate the prejudice to Lee and, thus, the State cannot show Detective Jones' statement did not have a continuing impact on the trial. The State argues that Detective Jones' statement occurred early in the trial, was immediately followed by a curative instruction, and Lee has not rebutted the presumption that the jury followed the instructions given. Moreover, the State argues that it presented multiple witnesses whose testimony provided strong evidence of Lee's guilt. As such, the State argues the statement did not have a continuing impact on the trial. We agree with the State.

After returning from a recess where the parties discussed Detective Jones' statement, Lee objected, and the district court sustained the objection and then instructed the jury that the statement was stricken and could not be considered. Thereafter, the State presented multiple witnesses who provided evidence which support the jury's guilty verdicts. The jury heard

---

[3]      Under the circumstances of this case, no negative connotation should be drawn from the attribution of the error to the State. There is no suggestion that the prosecutor knew that the detective would testify as he did, but *Ellington*, *supra*, requires that such testimony be attributed to the State.

testimony from the doctor who conducted the physical examination of B.B. and saw a deep notch tear on her hymen. The doctor testified that in ninety-four percent of abuse cases, the medical exam is normal, without any physical evidence on the vagina or hymen, but only in four to six percent of cases, the result is abnormal. The doctor clarified that the deep notch tear cannot be caused by self-exploration and comes from sexual intercourse or from having a baby, which B.B. has not had, and that often tears, even deep ones, heal. The visibility of the notch, although not conclusive, was strongly suggestive of forced penetration.

The jury also heard from the Children At Risk Evaluation Services (CARES) forensic interviewer. The interviewer testified to the process of interviewing a child who has potentially been abused. She testified to B.B.'s demeanor during the interview; the information B.B. disclosed regarding multiple instances of sexual abuse, including rape; and the memory difficulties when events span a significant period of time. The jury heard from the teacher in whom B.B. confided and the teacher's narrative of events, generally describing B.B.'s disclosure of sexual abuse and B.B.'s demeanor when she made the disclosures. The jury heard from B.B., describing details of the incidents, where it happened, and when it happened. The jury also heard from Officer Esquivel, who testified that he spoke with the teacher about B.B.'s disclosures and that he did not find any messages on B.B.'s phone between B.B. and Lee. Lee testified and provided his explanation of his relationship with B.B. and denied anything inappropriate ever occurring. Both parties called rebuttal witnesses. Additional evidence, such as the report from the medical exam, the CARES intake video of B.B., and diagrams drawn by various witnesses, was also admitted for the jury's consideration.

The jury was in the best position to assess the evidence, including the demeanor of the witnesses and weigh credibility. It is the jury's function to assess the demeanor of the witnesses and make a determination of credibility. This Court will not second-guess the jury's determination on credibility or the weight to be given to witnesses' testimony. *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996). Given that the vast majority of evidence was admitted after the single inadmissible statement by Detective Jones and the concomitant verbal jury instruction, we cannot say the statement had a continuing effect on the trial. Moreover, to the extent there was any prejudice to Lee, that was ameliorated by the district court's verbal order striking that statement and instructing the jury to disregard it and the subsequent written instruction that the statement was not evidence and should be disregarded. Nothing in the record suggests the jury

7

ignored both of the court's instructions or drew impermissible inferences of guilt from the stricken testimony. Instead, the jury's verdict is consistent with the quantum of evidence presented regarding Lee's guilt. When viewed in light of all the evidence and the district court's curative instructions, we conclude that Detective Jones' statement did not contribute to the jury's verdict.

## IV.

## CONCLUSION

Lee has shown no error in the district court's denial of his motion for mistrial. Therefore, Lee's judgment of conviction for two counts of rape and two counts of lewd conduct with a minor under the age of sixteen is affirmed.

Judge LORELLO and Judge TRIBE, **CONCUR**.